155 P.3d 947 (2007)
STATE of Washington, Respondent,
v.
Charles W. WEBER, Appellant.
No. 24038-0-III.
Court of Appeals of Washington, Division 3.
April 10, 2007.
*948 Gabriel Eliud Acosta, Attorney at Law, Walla Walla, WA, for Respondent.
David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
*949 KULIK, J.
¶1 Charles Weber was convicted of second degree assault as the result of a fight with another prisoner at the Washington State Penitentiary. Mr. Weber asserts ineffective assistance of counsel and challenges the sufficiency of the State's evidence to prove substantial bodily harm. We reject Mr. Weber's assertions and affirm his conviction.

FACTS
¶2 Charles Weber and Mark Holt, both inmates at the Washington State Penitentiary, became involved in a dispute during a prison softball game. The following day, after the inmates finished eating lunch, Mr. Weber and Mr. Holt fought in Mr. Weber's cell. There was a dispute as to whether Mr. Holt went to Mr. Weber's cell voluntarily to fight him, or whether Mr. Holt was taken there by force. Mr. Holt insisted that the inmates cornered him in the cell and began beating him.
¶3 Corrections Officer Wesley Marcum heard screams coming from Mr. Weber's cell. He alerted other officers to the disturbance and ran toward the cell. When the corrections officers arrived, Mr. Holt was huddled in a corner and covered in blood. Corrections officers documented blood spatter covering Mr. Weber's cell. Mr. Holt suffered a broken nose and was treated at a hospital. He also had abrasions, bruising, and scratches.
¶4 Mr. Weber was charged with second degree assault. At trial, Mr. Weber admitted to fighting with Mr. Holt. He also admitted that he struck the first blows. However, Mr. Weber stated that Mr. Holt had agreed to come to Mr. Weber's cell to fight and that the two had engaged in mutual combat.
¶5 The court gave several instructions on self-defense. However, the trial court did not give, and Mr. Weber did not request, any instructions regarding consent as a defense to the assault. The jury found Mr. Weber guilty of second degree assault.
¶6 After Mr. Weber was convicted, he moved for a new trial alleging ineffective assistance of trial counsel. Mr. Weber asserts that his trial counsel was ineffective because he failed to investigate two witnessesa fellow inmate at the Washington State Penitentiary and a guard who could have witnessed the inmates as they moved toward Mr. Weber's cell. In support of this motion, Mr. Weber presented the trial court with an affidavit from his trial counsel.
¶7 In this affidavit, trial counsel asserted that he lacked the funding to conduct investigation into some of the information supplied by Mr. Weber. In particular, counsel did not investigate an inmate at the Washington State Penitentiary, Jermine Mercado. Trial counsel did not speak to Mr. Mercado until after the trial. Counsel claimed that he had a contractual duty to do such investigation, but "simply did not get the job done" because he lacked the money and did not have an investigator. Clerk's Papers (CP) at 59. Counsel further stated that he should have investigated because the information that Mr. Mercado would have provided at trial was relevant and supported the defense theory of the case.
¶8 Mr. Weber also provided the court with Mr. Mercado's affidavit in support of his motion for a new trial. Mr. Mercado was a friend of Mr. Holt, and was housed in the same cell as Mr. Holt at the time of the alleged assault. Mr. Mercado claimed that Mr. Holt was "untruthful"[1] in his account of the assault, and that Mr. Holt had agreed with Mr. Weber that they should resolve their personal differences by fighting. Mr. Mercado said Mr. Holt was a willing participant in the fight.
¶9 The trial court denied Mr. Weber's motion for a new trial. As to the assertion of ineffective assistance of counsel, the trial court found that Mr. Weber's attorney "was competent even if the witness, Jermine Mercado and the guard in the `west booth' were not interviewed and/or called as witnesses." CP at 101.
¶10 Mr. Weber was sentenced to life without the possibility of parole as a persistent offender. The trial court found that Mr. Weber had two prior most serious offenses *950 based on certified copies of the prior judgments and sentences presented by the State.

ANALYSIS
Ineffective Assistance of Counsel
¶11 Washington has adopted the two-part Strickland[2] test to determine whether a defendant is entitled to relief based upon the ineffective assistance of trial counsel. State v. Cienfuegos, 144 Wash.2d 222, 226, 25 P.3d 1011 (2001). The defendant must first show that counsel's performance was deficient. The defendant must then show that this deficient performance prejudiced the defense, such that the result of the trial was unreliable. Id. at 226-27, 25 P.3d 1011 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). The second prong may be proven by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. Id. at 229, 25 P.3d 1011.
¶12 The reasonableness of counsel's representation is viewed in light of all of the circumstances. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991). A claim of deficient performance cannot be based on matters of trial strategy or tactics. Cienfuegos, 144 Wash.2d at 227, 25 P.3d 1011 (quoting State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996)). This court engages in a strong presumption that counsel's representation was effective. State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994) (quoting Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir.1985)).
¶13 The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics. But this presumption may be overcome by showing that the witness was not presented because counsel failed to conduct appropriate investigations. See State v. Thomas, 109 Wash.2d 222, 230, 743 P.2d 816 (1987).
¶14 Moreover, the failure to conduct a reasonable investigation is considered especially egregious when the evidence that would have been uncovered is exculpatory. In re Pers. Restraint of Davis, 152 Wash.2d 647, 721, 101 P.3d 1 (2004). While defense counsel is not required to interview every possible witness, the failure to interview witnesses who may provide corroborating testimony may constitute deficient performance. Id. at 739, 101 P.3d 1.
¶15 Here, the failure of defense counsel to investigate witnesses who may have corroborated Mr. Weber's defense could fall below an objective standard of reasonableness. Mr. Weber's attorney conceded that he was aware of the witnesses, and found their potential testimony material to Mr. Weber's defense, but "simply did not get the job done." CP at 59.
¶16 However, this court cannot deem the failure to investigate or to call witnesses prejudicial unless the record supports the determination that these witnesses would have been helpful to the defense. State v. Jury, 19 Wash.App. 256, 265, 576 P.2d 1302 (1978). In addition, this court must review the failure to investigate in light of the strength of the State's case. Davis, 152 Wash.2d at 722, 101 P.3d 1. The trial court did make findings that defense counsel's failure to interview or call the prison guard was a legitimate tactical decision and that Mr. Mercado's declaration in support of a new trial was either hearsay or contradictory to Mr. Weber's defense.
¶17 Mr. Weber was charged with second degree assault. As a defense, Mr. Weber suggests that both he and Mr. Holt voluntarily entered into and consented to fight.[3] He also claims that the witnesses *951 would have corroborated his claim of consent. Mr. Weber does not argue that the witness who was not investigated would support a claim of self-defense. For this court, the determination of whether Mr. Weber was prejudiced rests largely upon whether the defense of consent applies to assaults on fellow inmates.
¶18 Traditionally, consent was considered a defense to assault. See Hellriegel v. Tholl, 69 Wash.2d 97, 103, 417 P.2d 362 (1966). However, courts are now more hesitant to permit a defense of consent for some forms of assault because "society has an interest in punishing assaults as breaches of the public peace and order, so that an individual cannot consent to a wrong that is committed against the public peace." State v. Shelley, 85 Wash. App. 24, 29, 929 P.2d 489 (1997).
¶19 Currently, "the great weight of authority disfavors the defense of consent in assault cases." State v. Baxter, 134 Wash. App. 587, 599, 141 P.3d 92 (2006). In determining whether consent is a defense to a criminal charge, this court considers the nature of the act that forms the basis of the charge, the surrounding circumstances, and public policy regarding the activity involved. Id. at 598, 141 P.3d 92. Consent is not a defense to a crime if the activity that was consented to is against public policy. State v. Hiott, 97 Wash.App. 825, 828, 987 P.2d 135 (1999).
¶20 Public policy strongly disfavors permitting prison violence. Most correctional facilities are "fraught with serious security dangers." State v. Baker, 28 Wash.App. 423, 425, 623 P.2d 1172 (1981). Prisons are "populated by persons who have chosen to violate the criminal law, many of whom have employed violence to achieve their ends." Dawson v. Hearing Comm., 92 Wash.2d 391, 396, 597 P.2d 1353 (1979). In such a volatile environment, public policy demands that violence between inmates be eliminated where possible.
¶21 Moreover, public policy also imposes a nondelegable duty on those operating correctional facilities to maintain the health and safety of the prisoners incarcerated there. See Shea v. City of Spokane, 17 Wash.App. 236, 241, 562 P.2d 264 (1977), aff'd, 90 Wash.2d 43, 578 P.2d 42 (1978). The execution of this duty would be rendered impossible were this court to permit inmates to engage in physical violence under the rationale that both inmates agreed to fight. There is nothing redeeming or valuable in permitting fighting and every reason to dissuade it. Therefore, this court holds that consent is not a defense to the charge of second degree assault between two incarcerated persons.[4]
¶22 Because consent is not a defense to the charge of second degree assault when the assault occurs in the context of a prison fight, Mr. Weber has demonstrated no prejudice by his counsel failing to interview additional witnesses to establish consent. Thus, his claim of ineffective assistance of counsel fails.
Prior Criminal Offenses
¶23 Mr. Weber argues that if the U.S. Supreme Court decision in Almendarez-Torres v. United States[5] is overturned, the most likely result is that the State will have to prove prior criminal offenses to a jury beyond a reasonable doubt for criminal history to increase an offender's sentence. As noted by both parties, Mr. Weber raises this issue to preserve it should the law change. Both parties agree that, under the current law, the trial court committed no error.
Substantial Bodily Harm
¶24 To find Mr. Weber guilty of second degree assault, the jury had to decide that he intentionally assaulted Mr. Holt and thereby recklessly inflicted substantial bodily harm. See RCW 9A.36.021(1)(a). Mr. Weber challenges the sufficiency of the evidence *952 that he inflicted substantial bodily harm on Mr. Holt.
¶25 When the sufficiency of the evidence to support a conviction is challenged, the question for this court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). This court draws all reasonable inferences in favor of the State and against the defendant. Id. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id.
¶26 The statutory definition of "substantial bodily harm" includes "a fracture of any bodily part." RCW 9A.04.110(4)(b). Undisputed expert testimony and other evidence showed that Mr. Holt suffered a fractured nose from the assault by Mr. Weber. This injury fits squarely within the definition of "substantial bodily harm." Mr. Weber's challenge to the sufficiency of the evidence is without merit.
¶27 We affirm.
WE CONCUR: SWEENEY, C.J., and SCHULTHEIS, J.
NOTES
[1] CP at 73.
[2] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[3] Mr. Weber does not explicitly state in his brief that he is relying on a defense of consent. However, he does argue that his theory of the case is that Mr. Holt "voluntarily went to the cell to fight Mr. Weber," and that the disputed evidence "would have shown that both men voluntarily entered into the fight, thus providing Mr. Weber with a defense to the charged crime." Appellant's Br. at 10-11. Mr. Weber does not argue that Mr. Holt was the initial aggressor, and admitted on the stand that he threw the first punches in his fight with Mr. Holt. Mr. Weber's arguments indicate that consent, rather than self-defense, is the defense at issue in this case.
[4] This conclusion is in accord with numerous other jurisdictions that have also limited the application of the defense of consent to the charge of assault. See Durr v. Mississippi, 95-CT-00488-SCT, ¶ 8 (Miss.1998); Jaske v. Indiana, 539 N.E.2d 14, 18 (Ind.1989); Lyons v. Florida, 437 So.2d 711, 712 (Fla.Dist.Ct.App.1983); New Mexico v. Fransua, 85 N.M. 173, 174, 510 P.2d 106 (1973).
[5] Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).